[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 22-12452

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ANTHONY JAMES BRUEY,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:21-cr-00074-TPB-KCD-2

————————————————

Before WILSON, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Anthony James Bruey appeals his sentence of 51 months' imprisonment with 3 years of supervised release and an order of restitution for conspiracy to commit wire fraud, wire fraud, conspiracy to commit money laundering, and illegal monetary transactions. On appeal, he argues that the district court failed to consider all of the U.S.S.G. § 3B1.2 factors for determining whether a defendant is eligible for either a minimal or minor role reduction, and thus the district court clearly erred when it denied his request for a role reduction. For the following reasons, we affirm.

## I.

Bruey was charged in an indictment with: one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349; two counts of wire fraud in violation of 18 U.S.C. §§ 1343, 1349, and 2; one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h); and two counts of illegal monetary transactions in violation of 18 U.S.C. §§ 1957 and 2. Bruey pled guilty to these counts, and the district court adjudicated him guilty.

Before sentencing, a probation officer prepared a presentencing investigation report ("PSI"), which reported the following. In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"). Pub. L. No. 116-136, 134 Stat. 281 (2020). Among other things, the CARES Act authorized two different loan programs for small businesses: the

Paycheck Protection Program ("PPP"), which concerned loans funded by private lenders and fully guaranteed by the Small Business Administration ("SBA"), *id.* § 1102, 134 Stat. at 286. (codified at 15 U.S.C. § 636(a)(36)), and low-interest financing through the Economic Injury Disaster Loan program ("EIDL"), *id.* § 1110, 134 Stat. at 306.  Bruey engaged in a conspiracy with his wife, a co-defendant below, to defraud both the private lenders funding the PPP and the SBA.  Between April 2020 and April 2021, Bruey and his wife ("the Brueys") submitted over two dozen fraudulent loan applications seeking benefits totaling close to $2 million.  At the time, Bruey was on state probation for aggravated assault/deadly weapon and battery by strangulation.

The Brueys applied for fifteen EIDL loans, six of which were funded for a total of $763,300.  One of those applications, filed in Bruey's name for a purported sole proprietorship, "fraudulently represented the gross revenues, costs of goods sold, and number of employees for a business that did not exist."  The application also falsely stated that Bruey had not been convicted of a felony or served a term of probation within the last five years.  These false statements caused the SBA to approve a $76,800 loan and a $10,000 advance and deposit the funds in Bruey's bank account.

The Brueys also applied for twelve PPP loans, six of which were funded for a total of around $118,000.  For example, in late April 2020, a fraudulent PPP loan application was submitted in Bruey's name.  The application represented that Bruey was an eligible, self-employed individual and falsely stated that his net profits

for his business were $110,719 in 2019. Again, the application falsely stated that Bruey had not been convicted of a felony or served a term of probation within the last five years. Due to these false representations, a bank funded a $20,583.34 PPP loan deposited in Bruey's bank account.

Bruey misused these funds for his personal gain. The Brueys received twelve EIDL and PPP loans, with the proceeds totaling over $880,000.

The PSI grouped together all six counts for sentencing guideline calculation purposes pursuant to U.S.S.G. § 3D1.2(d). The PSI calculated Bruey's offense level pursuant U.S.S.G. § 2S1.1, because that was the offense guideline that produced the highest offense level. *See* U.S.S.G. § 3D1.3(b). This meant an initial base offense number of seven, *see* U.S.S.G. § 2B1.1(a)(1), and a sixteen-level enhancement because the intended loss here was more than $1,500,000 but less than $3,500,000, *see* U.S.S.G. § 2B1.1(b)(1)(I), resulting in a base offense level of 23. Further, because Bruey was adjudicated guilty of one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), the offense level was enhanced by two. *See* U.S.S.G. § 2S1.1(b)(2)(B). The offense level was then decreased by two because Bruey accepted responsibility for the offense, *see* U.S.S.G. § 3E1.1(a), and decreased by one because Bruey assisted authorities in the prosecution of his own misconduct by timely notifying authorities of his intention to enter a guilty plea, *see* U.S.S.G. § 3E1.1(b). Therefore, his total offense level was 22. His criminal history category was III based on a

criminal history score of four. The resulting guidelines range was 51 to 63 months' imprisonment.

In his written objection, Bruey objected to the PSI's conclusion that he was not entitled to a decrease in offense level based on his role in the offense. Bruey argued that he should have received either a minimal or minor role reduction pursuant to U.S.S.G. § 3B1.2. Bruey agreed that he knew the funds were obtained fraudulently and benefited from them, but he denied personally submitting any of the claims in the case. The PSI, however, concluded that no reduction was warranted, pointing first to the fact that four EIDL applications and two PPP applications were submitted in Bruey's name using his personal identifying information. The PSI also noted that Bruey knowingly received fraudulent funds, some of which were deposited into bank accounts where he was the sole signatory, and that Bruey then used these funds with his wife to buy, among other things, vehicles and a shared residence.

Bruey renewed his objection and made similar arguments during his first sentencing hearing. Bruey's counsel told the district court that Bruey "fully acknowledges that he knew it was being done on his behalf, and he fully acknowledges receiving the money, and he fully acknowledges spending the money." But that because Bruey "did not, at any time, file any of the electronic documents or applications" for either the PPP or EIDL loans, counsel argued he should receive a four-level minimum role reduction. In response, the government acknowledged that Mrs. Bruey was on probation for public assistance fraud at the time the instant crimes

were committed and said that it considered "her to have more of the white-collar mind" than Bruey. The government also acknowledged that most applications were filed in Mrs. Bruey's name, possibly because Bruey was below the credit score threshold needed to qualify for an EIDL loan. It was the "government's belief that a lot of the brains behind the operation was" Mrs. Bruey. Even with all of this, the government said that Bruey "understood and knew of the scheme's purpose, and that it was going on." And "he certainly benefited from it."

Later, at a joint sentencing hearing for both Bruey and his wife, Bruey again objected for not receiving a minimal role reduction, with his counsel arguing that Bruey did not file any of the loan applications and that he did not do any of the related internet work. But Bruey's counsel did acknowledge that Bruey co-owned one of the purported companies for which the Brueys received loans. The government responded that, while Bruey was not the one that created many of the fraudulent documents and applications, he benefitted greatly from them, which is a pertinent factor in making a minimal or minor role determination. *See* U.S.S.G. § 3B1.2 cmt. n.3(C)(iii). The government noted that the Brueys had purchased vehicles with the loan money as well as a home worth over $200,000. The government further argued that Bruey knew what was happening with respect to the fraudulent scheme. The district court ultimately overruled Bruey's objection without explanation.

Before the district court sentenced Bruey, it also heard from the government and Mrs. Bruey concerning her sentence. Mrs.

Bruey's counsel read text messages that Bruey wrote to Mrs. Bruey and argued that Bruey was abusive. Counsel also quoted from a psychologist's report, which provided that Mrs. Bruey "is highly influenced and susceptible to coercion due to the power and control that Mr. Bruey exerts over her. She is not allowed to question his authority for fear of being attacked verbally and physically." In light of this evidence, counsel argued that Mrs. Bruey "was the peon of the operation."

The district court sentenced Bruey to 51 months imprisonment with 3 years of supervised release and an order of restitution. This appeal follows.

## II.

We review a district court's denial of a role reduction for clear error. *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016). "Under this standard, we will not disturb a district court's findings 'unless we are left with a definite and firm conviction that a mistake has been committed.'" *United States v. Clarke*, 562 F.3d 1158, 1165 (11th Cir. 2009) (quoting *United States v. Crawford*, 407 F.3d 1174, 1177 (11th Cir. 2005)). This is because district court judges are "in the best position to weigh and assess both the defendant's role in her relevant conduct and the relative degrees of culpability of the other participants in that conduct." *United States v. De Varon*, 175 F.3d 930, 938 (11th Cir. 1999) (en banc)). Therefore, the "district court's 'choice between two permissible views of the evidence' as to the defendant's role in the offense will rarely constitute clear error '[s]o long as the basis of the trial court's

decision is supported by the record and does not involve a misapplication of a rule of law.'" *Cruickshank*, 837 F.3d at 1192 (alteration in original) (quoting *De Varon*, 175 F.3d at 945).

## III.

A "defendant may receive a two to four level reduction in [his] base offense level where [his] role in the offense can be described as minimal, minor, or somewhere in between." *De Varon*, 175 F.3d at 939. "Minimal participants may receive a four-level reduction, minor participants may receive a two-level reduction, and those whose participation falls in between may receive a three-level reduction." *Id.* (citing U.S.S.G. §§ 3B1.2(a)–(b)). Minimal participants are defendants who are "plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2 cmt. n.4. "[T]he defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." *Id.* A minor participant is a defendant "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id.* cmt. n.5. The defendant bears the burden to prove by the preponderance of the evidence that he is eligible for a mitigating role. *United States v. Martin*, 803 F.3d 581, 591 (11th Cir. 2015).

The decision about whether to apply a role reduction is "based on the totality of the circumstances" and is "heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2 cmt. n.3(C). The district court should consider, "to the extent

applicable," *United States v. Valois*, 915 F.3d 717, 732 (11th Cir. 2019), the following non-exhaustive list of factors:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2 cmt. n.3(C). Along with these factors, we have provided two overarching principles to guide district courts: "first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and second, [his] role as compared to that of other participants in [his] relevant conduct." *De Varon*, 175 F.3d at 940.

Importantly, however, we have held that, in considering these factors, "a district court is not required to make any specific findings other than the ultimate determination of the defendant's role in the offense." *Id.* "So long as the district court's decision is supported by the record and the court clearly resolves any *disputed*

factual issues, a simple statement of the district court's conclusion is sufficient." *Id.* at 939.  Therefore, when we evaluate a district court's sentencing decision, we may "consider the record from the entire sentencing hearing and need not rely upon the district court's summary statement made at the closing of the sentencing hearing." *United States v. Suarez*, 939 F.2d 929, 934 (11th Cir. 1991).

Bruey has failed to show that the district court clearly erred in denying a role reduction under U.S.S.G. § 3B1.2.  The record supports the district court's decision.  While Bruey argues that his wife is more culpable because she submitted the loan applications, we have said "[t]he fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants." *De Varon*, 175 F.3d at 944.  And the record provides ample evidence of Bruey's involvement beyond a mitigating role.

For example, Bruey "knew the [loan] funds were fraudulently obtained," and "fully acknowledges that he knew it was being done on his behalf."  There was also evidence consisting of text message conversations between Bruey and his wife about their scheme.  All of this is relevant to the "degree to which [Bruey] understood the scope and structure of the criminal activity."  *See* U.S.S.G. § 3B1.2 cmt. n.3(C)(i).  Record evidence also indicates that Bruey had the ability to coerce and pressure his wife to act on his behalf and that he had physically abused her in the past, which speaks to the "degree to which [he] . . . influenced the exercise of

decision-making authority."[1] *See id.* cmt. n.3(C)(iii). Further, as has been discussed, Bruey stood to benefit, and did benefit, from the couples' fraudulent activity. *See id.* cmt. n.3(C)(v) (listing as a relevant factor "the degree to which the defendant stood to benefit from the criminal activity"). With this record, we cannot conclude that the district court clearly erred.

And while Bruey points us to cases where we "explained the legal error in making a minor role decision based solely on one factor," *United States v. Presendieu*, 880 F.3d 1228, 1250 (11th Cir. 2018), the district court here did not cabin its decision to one factor. Unlike in those cases, the district court below did not indicate that one factor—here, the degree to which the defendant stood to benefit from the criminal activity—was "the *only* factor to be considered in a case like this one." *Cruickshank*, 837 F.3d at 1195.

We thus conclude that the district court did not err when it denied Bruey both a minor participant and a minimal participant role reduction. A review of the record shows that the district court properly examined the totality of the circumstances and found that Bruey was not eligible for either role reduction. Accordingly, we affirm Bruey's sentence.

**AFFIRMED.**

---

[1] In sentencing Bruey's wife, the district court took the couple's relationship into account and the court concluded that the relationship could not explain and justify all of Mrs. Bruey's behavior.